Smith, Judge,
delivered the opinion of the court:
Appealed claims 1, 4 and 5 of appellants’ patent application, Serial No. 596,732, filed July 9, 1956, relate generally to a method for controlling corrosion of the interior metallic surfaces of furnaces. These claims stand rejected as unpatentable over a combination of prior patents. The legal issue is one of obviousness under 35 U.S.C. 103.
The problem which appellants allege they have solved arises from the fact that many residual fuel oils such as are commonly used in steam boilers contain sulphur. When such oils are burned, sulphur dioxide is formed as one of the combustion products, which, under certain combustion conditions, forms sulphur trioxide which is extremely active in corroding the metallic furnace surfaces. Combustion gases containing amounts of sulphur trioxide so produced have a relatively high dew-point, and thus the sulphur trioxide deposits out onto the metallic furnace surfaces at areas of relatively high temperature, fairly near to the combustion zone itself, with resulting corrosion damage to those surfaces.
Appellants assert that their claimed method alleviates this problem. In essence, appellants’ invention involves injecting ammonia into the combustion gas stream at a particular point. The ammonia neutralizes the sulphur trioxide (forming ammonium sulphate) and thus eliminates its corrosive effect. Appellants teach that the introduction of the ammonia into the combustion gas stream must be at an area close enough to the flame zone that the temperature is above the dew-point, *1369 so that the sulphur trioxide will not deposit out prior to contacting the ammonia, and yet must be sufficiently remote from the flame zone that the temperature of the gas stream is below the temperature at which the ammonia dissociates to nitrogen and hydrogen and loses its neutralizing effect. Claim 1 is representative of the claims on appeal and reads as follows:
A method for reducing corrosion in furnaces when using a sulphur-containing carbonaceous or hydrocarbon fuel which comprises continuously injecting ammonia into said furnace in an amount constituting from 0.5% wt. to 9.0% wt. based on the total weight of sulphur in elemental and combined form in the fuel fed to said furnace, said ammonia being injected into a part of the combustion zone of said furnace beyond the flame zone at which the temperature is above the dew-point of the untreated combustion gases and below 500° C.
Claim 4 adds to the method defined in claim 1 the limitation that the ammonia be injected in admixture with recycled combustion gases. Claim 5 is also dependent upon claim 1, and specifies that the fuel be “a residual fuel oil, derived from petroleum and containing less than 5% by weight of sulphur,” and also defines the required amount of ammonia in terms of a by-weight percentage of the fuel oil rather than the sulphur, as in claim 1. Appellants do not contend that claims 4 and 5 are patentable independently of claim 1. We will therefore treat all the appealed claims as one for purposes of this opinion.
The Board of Appeals sustained the examiner’s rejection of the claims on the basis of the teachings of these references:
Harlow, 2,412,809, Dec. 17,1946.
Darrah, 2,136,166, Nov. 8,1938.
British Patent, 496,692, Dec. 5,1938.
The patentee in Harlow deals with a problem similar to that faced by appellants. The Harlow reference discloses that ferric oxide, present in deposits on the furnace surfaces, acts as the catalyst which promotes the oxidation of sulphur dioxide to sulphur trioxide. Harlow indicates that coating the furnace surfaces with certain powders or dusts or with a solution of sodium carbonate is effective in inhibiting the catalytic action of the ferric oxide and thus prevents the formation of sulphur trioxide.
Darrah discloses a drying apparatus in which objects are dried by passing hot combustion gases over them. These gases contain, among other things, sulphuric acid vapor which causes discoloration of the drying objects. Darrah discloses that the injection of ammonia into the circulating gases is an effective way to prevent such discoloration.
The British patent discloses a method of inhibiting the formation of adhering deposits on the surfaces of oil-fired boilers by introducing substances, such as ammonia, into the flame or into the combustion gases.
*1370 The essence of the Patent Office’s position was stated by the board as follows:
* * * While the Darrah patent is concerned with the harmful effects of the sulphuric acid on the materials being treated in the furnace and not on the parts of the furnace itself which inherently is present, nevertheless there is a teaching in this patent of the elimination of the harmful effects of sulphuric acid by neutralizing the same with ammonia. We are of the opinion that it is obvious to one skilled in the art to utilize or substitute Darrah’s solution for that of Harlow in the elimination of the harmful effects of sulphuric acid, namely by neutralizing the same, because it is merely the selection of one of two known solutions.
■ We do not agree. While it is true that the Harlow patent disclosed the ‘problem faced by appellants, it purports to solve the problem in an entirely different way: namely, by preventing the formation of sulphur trioxide rather than by neutralizing it after it has been formed. The teaching of the British patent was of no help to appellants, since it is directed to the problem of preventing the formation of deposits of ash, not to neutralizing corrosive materials. Thus, if any of the cited patents suggested appellants’ solution to the problem posed by Harlow, it must necessarily have been Darrah. However, we find in Darrah no teaching which would have rendered appellants’ claimed method obvious to one of ordinary skill in the art at the time appellants made their invention.
The Darrah specification contains the following statement:
According to tests wbicb I have made, the addition of the neutralizing material to the gases does not result in wholly neutralizing the sulphur in the gases. It appears, however, that the materials added collect in part upon the sheets which are passing through the drier and in this manner serve to neutralize the acid fumes in the circulating gases at the time that the fumes approach the sheets. I have made tests of the gases taken from the system when the neutralizing effect on the sheets was quite complete and have found that the gases still give ample evidence of a large acid content. * * * [Emphasis added.]
We think this statement makes it very clear that Darrah does not suggest appellants’ solution to Harlow’s problem. First, it should be noted that Darrah is concerned with overcoming the discoloring effect of sulphuric acid on drying objects while appellants faced the problem of finding a way to neutralize sulphur triosaide in the combustion gases. Moreover, it is evident from the above statement that Darrah did not succeed in removing all of the sulphuric acid from the combustion gases; indeed, as stated above, he “found that the gases still give ample evidence of a large acid content.” The solicitor argues that this is so only because Darrah did not use a sufficient quantity of ammonia. We do not think the answer is necessarily so simple. At any rate, Darrah was concerned only with preventing discoloration of the drying objects and was not interested in the subsequent acid content *1371 ■of the combustion, gases per se. We will not speculate as to why Dar rah did not go further and disclose a method for removing all, or substantially all, the sulphuric acid from the combustion gases. The fact remains that he did not; rather, the above-quoted portion of his specification seems to suggest that adding ammonia is not a very ■effective way to remove sulphuric acid from the combustion gases, and the specification does not say anything at all about neutralizing ■sulphur trióxido.
In short, we think appellants have discovered a new and unobvious way to solve an old problem. The appealed decision is accordingly reversed.